UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| KIMBERLY M[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 1:20cv297 |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income (SSI) under Title XVI of the Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

2

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2. The claimant has not engaged in substantial gainful activity since January 24, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: asthma, vocal cord dysfunction, sleep apnea, migraines, obesity, depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings") (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she has been restricted to the performance of jobs that do not require more than occasional negotiation of ramps or stairs, balancing, stooping, crouching, crawling, kneeling or interaction with the general public, has been unable to perform jobs that require negotiation of slippery or uneven surfaces or work at unprotected heights or around dangerous machinery, has been unable to work at jobs that require exposure to respiratory irritants, including extremes of heat, cold or humidity although she has been capable of working in a typical office environment, has been unable to perform jobs that require work performed at a production rate pace or climbing of ropes, ladders and/or scaffolds, has been limited to the performance of indoor wok in an environment with controlled temperature and has been restricted to the performance of jobs that do not require anything more complicated than simple, routine work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 21, 1967 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the

> claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 24, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 49-57).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on March 17, 2021. On April 28, 2021 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on May 12, 2021. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be reversed and remanded for an award of benefits.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is

> disabled. A negative answer at any point, other than step 3, stops
> the inquiry and leads to a determination that the claimant is not
> disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff was born January1967 and was in the age category of "closely approaching advanced age" as of her alleged disability onset date (AR 162). She completed the 12th grade (AR 322). A vocational witness who testified at the ALJ hearing classified her past work as a hospital registrar, hospital insurance clerk, data entry clerk, and front desk clerk (AR 131-132). The past work was classified as sedentary in exertion and semi-skilled to skilled according to the Dictionary of Occupational Titles (DOT) (AR 131-132).

As part of the application development process, Plaintiff and her a friend, SD, completed function reports in April 2017 (AR 332-360). Plaintiff reported difficulty performing activities due to being out of breath, coughing, and loss of her voice (AR 332-337). She also experienced migraines and would wake in the middle of the night with a headache and difficulty breathing (AR 333, 336). She estimated that she could walk one-half block and often needed to use her rescue inhaler and did breathing treatments (AR 332-335). Completing tasks and concentration were very hard with her headaches (AR 337). She could perform personal care activities and some household chores at a slower pace and with breaks (AR 333-335). She did not handle stress well and became frustrated about things she was unable to do (AR 338).

Plaintiff lived alone and took care of her own cleaning and cooking but with difficulty

(AR122). She could do her own grocery shopping but did not get much at a time because she could not go through the whole store due to shortness of breath and getting tired (AR 122-123). Plaintiff had 14 steps to her apartment and had to take a break halfway up to use her inhaler (AR 129). She felt her medications caused her difficulty explaining things and putting sentences together, and that medications made her "stupid and mean" (AR 125-126). She also felt fatigued and napped daily (AR 130).

In support of remand, Plaintiff argues that the ALJ erred at Step 3 in his consideration of Listing 3.02 (Chronic Respiratory Disorders). At step three of SSA's sequential evaluation process, an ALJ is required to determine whether the claimant's impairments meet or equal a listed impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1; *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(iii). For each listed impairment, there are objective medical findings and other specific requirements which must be met to satisfy the criteria of that listing. 20 C.F.R. § 404.1525(c)(2)-(3). When a claimant satisfies all criteria of a listed impairment, that person is deemed presumptively disabled and entitled to benefits. *Barnett*, 381 F.3d at 668; 20 C.F.R. § 404.1525(a). Even if a claimant's listed impairment does not satisfy each requirement of the specified elements of the listing, a finding of disability is supported if the record contains "other findings related to [the] impairment that are at least of equal medical significance to the required criteria" or if "the findings related to [a combination of] impairments are at least of equal medical significance to those of a listed impairment." *Id*. §404.1526. In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett*, 381 F.3d at 668.

6

Plaintiff contends that the record in this case contains evidence indicating that her impairments met or medically equaled the requirements of Listing 3.02 (Chronic Respiratory Disorders). 20 C.F.R. Pt. 404, Subpt. P, App'x. 1, §3.02. A claimant with a chronic respiratory disorder may qualify as "disabled" under Listing 3.02 if there is evidence of the following:

> 3.02 Chronic respiratory disorders due to any cause except [cystic fibrosis] (for CF, see 3.04) with A, B, C, or D:
>
> A. FEV1 (see 3.00E) less than or equal to the value in Table I-A or I-B for your age, gender, and height without shoes (see 3.00E3a)
> ….
> C. Chronic impairment of gas exchange demonstrated by 1, 2, or 3:
>
> 1. Average of two unadjusted, single-breath DLCO measurements (see 3.00F) less than or equal to the value in Table III for your gender and height without shoes (see 3.00F3a)
> …..

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02.

In this case, the ALJ stated he "closely examined the possible applicability of Sections 3.02 (defining and describing "[c]hronic respiratory disorders") or 3.03 ("[a]sthma") of the Listings" (AR 50). He then concluded that neither listing was "met or medically equaled" because Plaintiff had "only one serious asthma attack" (AR 50-51). Listing 3.02, which is applicable to asthma, chronic obstructive pulmonary disease, and other respiratory disorders, is satisfied with evidence of FEV1 or DLCO values within the requisite range. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.00.A., 3.02A., 3.02C.

In this case, the ALJ never mentioned the FEV1 or DLCO values required to satisfy listing 3.02. The decision also contains no discussion at step three or elsewhere identifying any of the FEV1 or DLCO levels. Plaintiff contends that Table I for Listing 3.02 establishes a FEV1 value of

7

1.35 or less as meeting Listing 3.02A for an individual of Plaintiff's gender, age, and height. The record in this case contains the following relevant respiratory testing values for Plaintiff:

11/4/2016 (AR 529) FEV1 1.51 (Pre-bronch[2]); 1.66 (Post-bronch)

11/30/2016 (AR 531) FEV1 2.07 (Pre-bronch); 2.34 (Post-bronch)

1/25/2017 (AR 532) FEV1 1.55 (Pre-bronch); 1.62 (Post-bronch)

2/22/2017 (AR 535) FEV1 1.29 (Pre-bronch); 1.14 (Post-bronch)

7/13/2017 (AR 621-622) FEV1 1.40 (Pre-bronch); 1.07 (Post-bronch) DLCO 11.2

8/2/2017 (AR 874) FEV1 0.99 (Pre-bronch) 1.31 (Post-bronch)

9/8/2017 (AR 845-846) FEV1 1.40 (Pre-Bronch); 1.59 (Post-bronch)

11/9/2017 (AR 659) FEV1 1.51 (Pre-bronch); 1.77 (Post-bronch)

11/10/2017 (AR 838) FEV1 1.74 (Pre-bronch)

1/22/2018 (AR 831) FEV1 2.31

5/11/2018 (AR 827) FEV1 2.17

12/14/2018 (AR 825) FEV1 2.0

The evidence summarized above documents that on 2/22/2017 (AR 535) and 8/2/2017 (AR 874) Plaintiff had listing level FEV1 values as required in Table I. In February 2017, her highest FEV1 value was 1.29, and in August 2017 it was 1.31. Listing 3.02A requires a FEV1 of 1.35 or less.

Plaintiff argues that the ALJ's failure to even mention the pulmonary function testing results was a harmful error. The record shows that Plaintiff has been diagnosed with and treated

---

[2] If the FEV1 value is less than 70% of predicted normal value, SSA requires repeat spirometry testing after inhalation of a bronchodilator. Listing 3.00E.2.b.

for multiple pulmonary disorders, including asthma, chronic obstructive pulmonary disease, and sleep apnea (AR 505, 541-547, 568-572, 589-592, 602-603, 612-614, 810-823, 857-860, 871-873, 878-881, 890-906).

Plaintiff argues that the state agency medical consultants' review of her claim provides no assurance that Listing 3.02 was properly considered because the consultants mentioned only listing 3.03 (AR 169-171, 195-197). Plaintiff points out that the state agency medical consultants never mentioned listing 3.02 nor did they explain how they considered the listing level FEV1 values under the alternative criteria of listing 3.02. As noted above, the record shows that the February 2017 FEV1 value of 1.29 is listed as evidence received at the initial level of review, but the consultants did not discuss the significance of that evidence, or mention the August 2, 2017 listing level FEV1 (AR 179, 874). The state agency medical consultant also failed to mention Plaintiff's inpatient hospitalization from July 11-14, 2017 for her asthma (AR 206, 603, 612-618, 908). During the hospital stay, Plaintiff was also assessed with elevated lactic acid which Dr. Cervoni suspected was related to lung volume depletion or possibly the increased work of breathing; her DLCO was also very low and consistent with severe reduction in diffusion capacity (AR 598-645). Plaintiff thus argues that the consultants' opinions do not suffice as consideration of the listings. *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011).

In response, the Commissioner claims that the failure to address the evidence that Plaintiff met Listing 3.02 was not a problem "because Plaintiff's condition simply was not that severe." However, it is clear that if the Agency credited its own record of Plaintiff's height, these same FEV1 values meet impairment listing 3.02. The Commissioner claims that listing 3.02 requires a FEV1 value of 1.25 or less for a woman of Plaintiff's age and height, but this assumes that Plaintiff

9

is 63 inches tall, not 65 inches tall, which is the height the agency's own examiner recorded (AR 658). If Plaintiff is between 64.5 and 66.5 inches tall, the listing requires a less stringent FEV1 value of 1.35 or less. Despite the existence of some records indicating Plaintiff is 63 inches tall, SSA's own consultative examination report, which was completed for the purpose of evaluating the severity of Plaintiff's breathing impairments, indicates Plaintiff's "Measured, NOT Estimated: Height (without shoes)" is 65 inches. (AR 658). Other records also list Plaintiff's height as 65 inches (AR 621-622, AR 659, AR 825).

The Commissioner provides no explanation why the agency would disregard a measured height from its own examiner. Rather, the Commissioner picked a shorter height to impose a more stringent standard than listing 3.02 requires. Even more troublesome is the ALJ's failure to even recognize this potentially outcome determinative height discrepancy. The decision does not reflect that the ALJ even considered how tall Plaintiff was or that he was aware that she had FEV1 values satisfying Listing 3.02 assuming she is 65 inches tall.

The Commissioner concedes that the state agency medical consultants failed to address the low FEV1 values in the range of listing 3.02 for a woman 65 inches tall. There is also no dispute that the only respiratory listing the state agency medical consultant mentioned was Listing 3.03 (AR 169, 181, 195, 208).

Two things are clear to this court. First, it is clear that Plaintiff is 65 inches tall. While some medical records have her listed as being 63 inches tall, it does not appear that she was actually measured at those times. However, as documented at AR 658, where Plaintiff's height was actually measured (during an agency consultative exam), she was 65 inches tall. Adult height, unlike weight, does not go up. If Plaintiff was 65 inches tall on November 9, 2017, she

10

was 65 inches tall on August 2, 2017, and on February 22, 2017. Second, it follows that it is clear that Plaintiff met the requirements of Listing 3.02 on August 2, 2017 (AR 874) and on February 22, 2017 (AR 535), where her FEV1 values were 1.31 and 1.14, respectively, well below the requirement that her FEV1 be 1.35 or less. Thus, as Plaintiff has presented uncontroverted evidence that she meets Listing 3.02, this Court must remand for an award of benefits. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED FOR AN AWARD OF BENEFITS.

Entered: May 18, 2021.

s/ William C. Lee
William C. Lee, Judge
United States District Court